## RINER v. NEW HAMPSHIRE FIRE INSURANCE COMPANY.

PRINCIPAL AND SURETY—INSURANCE AGENT'S BOND — DIRECTING VERDICT — EVIDENCE.

1. Where an insurance company accepts a note from its agent for past business, payable at a future time, without the consent of the surety on the agent's bond, the surety will be discharged as to that indebtedness.

2. If after giving the note, the agent transacts other business, in which he receives other funds belonging to the company, his payment of those funds to the company will operate to discharge the liability therefor as against the surety, although the same may have been applied upon an indebtedness for which the surety was not liable, the latter not consenting thereto.

3. To take advantage of such payment, in a suit upon the bond, no plea of payment is necessary on the part of the surety, since it is necessary for the company to show an indebtedness from the agent for which the surety is responsible under his bond in order to recover.

4. There being some evidence in the case tending to show that the money paid by the agent upon an old indebtedness was received from current business, and which should have gone to the credit of current business as against the surety, it was error for the court to direct a verdict for the company, but the case should have been submitted to the jury under proper instructions. The excluded testimony of a witness is not in the case for consideration, on motion for direction of a verdict.

5. It was error to exclude from the testimony of the agent that part relating to a settlement with the company for former business, and the giving of a note therefor, as against an objection of immateriality.

[Decided May 23, 1901.]

On Rehearing.   For former opinion, see *ante*, 81.

*W. R. Stoll*, for defendant in error, for the petition for rehearing, in addition to the argument and points made by the brief on the original hearing, contended the plaintiff in error had it in his power to produce the agent to show the source of the funds which were used to pay the old note, and not having done so, the presumption follows that the testimony of the agent would have been unfavorable to the plaintiff in error, and cited Gulf etc., Ry. Co. v. Ellis, 10 U. S. App., 640; Graves v. U. S., 150 U. S., 118; Hall v. Vanderpool, 26 Atl., 1069; Ry. Co. v. Conley, 12 U. S. App., 170; Ry. Co. v. Matthews, *id.*, 172; Graves v. Wallace, 10 *id.*, 647; Wernerstrom v. Kelley, 7 N. Y. Misc., 173; People v. Graves, 554; Cole v. Ry. Co., 95 Mich., 77; Cooley v. Foltz, 85 *id.*, 47;

Ins. Co. Smith, 117 Mo., 261; Wimer v. Smith, 22 Ore., 469; Werner v. Litzinger, 45 Mo. App., 106; Weeks v. McNulty, 101 Tenn., 495; Lebanon v. Zerwich, 77 Ill. App., 486; Paulson v. Ry. Co., 51 N. Y. Supp., 933; Ginder v. Bachman, 8 Pa. Supr. Ct., 405; Bank v. Wall Paper Co., 77 Fed., 85; Merc. Co. v. Truax, 44 W. Va., 531; Shreyer v. Turner Fl. Co., 29 Ore., 1; Ry. Co. v. Roberts (Colo.), 49 Pac., 428; Ry. Co. v. Ward, 954. Also, that there was no offer of proof to show the source of the funds, or that they came from current business, and that matter was not called to the attention of the trial court in any way. And that no advantage could be taken of the matter on error, citing, Elliott on App., Pro., Secs. 742–744; 1 Thomp. on Tr., Secs. 678–9; McGinness v. State, 4 Wyo., 115. It was contended further that there was no testimony in the case even had the agent's deposition been received to show or tending to prove that the money came from current business.

POTTER, CHIEF JUSTICE.

This case is fully stated in the former opinion. (60 Pac., 262.) The defendant in error, an insurance company, brought suit against the plaintiff in error, as surety on the body of its agent W. A. Richards, to recover the amount of certain funds of the company alleged to have been received by the agent between December 1, 1892, and the termination of his agency in August, 1893, and not paid over.

The case was tried to a jury, but a verdict was directed for the plaintiff, and judgment rendered thereon. For error in directing the verdict, and in excluding certain testimony contained in the deposition of the agent the judgment was reversed, and a rehearing is applied for.

Upon further consideration we are convinced that we should adhere to the conclusions heretofore announced.

There was no contention as to the amount of money received by the agent for the period in controversy. The only credits allowed him in the account made up by the company

were the following: $100, paid July 24, 1893; $35, October 7, 1893, and $168.02 credited for cancelled policies. A balance of $346.03 was left for which judgment was prayed with interest. The jury were directed to return a verdict for the amount claimed. It appeared by the testimony admitted on the trial that the agent had in May, 1893, paid to the special agent of the company who had supervision over the local agency in question, the sum of four hundred dollars. The error in directing a verdict was held to consist in withdrawing from the consideration of the jury the questions arising out of that payment. The particular question was whether the four hundred dollars, so paid, consisted of money of the company in the agent's hands received on account of the business for the period covered by the claim in suit; and whether, therefore, as against the surety, it should properly be applied as a credit upon that claim. The representative of the company, Frederick W. Lee, to whom the payment was made, testified that it was made and applied upon an old note given in settlement for previous business. The secretary of the company, whose deposition was taken on behalf of the company, testified nothing about the four-hundred-dollar payment, but stated that the books did not contain any record of a note. The testimony of those two witnesses constituted, practically, the entire evidence in the case when the motion for direction of verdict was made and sustained, owing to the exclusion of the deposition of the agent Richards, offered by the defendant, and about all the other evidence offered by the latter; and as a reference to the testimony is necessary to determine whether the court properly directed a verdict, it may be well to briefly review that part of the evidence which bears upon the payment alluded to. Mr. Lee, the special agent, had stated in his direct examination, that the breach of the bond consisted in the agent's failure to pay over the funds in his hands belonging to the company, amounting to the sum of $346.03.

On cross-examination he testified as follows:

29

Q. State whether or not you at any time made any demand upon Mr. Richards to turn the money over to the company other than this time.

A. Not previously.

Q. Not previously to when?

A. Not previous to the time of settlement in August, 1893.

Q. You made no demand upon him for money previous to that time?

A. T made a collection on an old account in May. In my May visit here, May, 1893.

Q. How much was that collection?

A. Four hundred dollars.

Q. How much did he pay to you at that time?

A. Four hundred dollars.

Q. What was it for?

A. That was for the balance of the note.

Q. A note in favor of your company, the plaintiff?

A. Yes, sir.

Q. What was the note for?

A. The note was given to represent premiums for which he had issued policies.

Q. When was the note given?

A. In December, 1892.

Q. What was the original amount of the note?

A. For six hundred and odd dollars.

Q. You had this same note in your possession at the time you made the collection of four hundred dollars?

A. The original note was given for six hundred and some dollars; it was for four months; he paid something like three hundred dollars on it at the time it fell due, and gave, as I recall it now, a note for the balance, representing four hundred dollars.

Q. On the occasion of your visit in May he paid you the note?

A. The balance of the note.

Q. How much was he owing your company at that time?

A. As I have been able to figure it from these accounts there was a balance on 1891 business that I spoke of, $400 and $533.56 on the business beginning December 1, 1892.

The witness testified that there had been no remittance on the business of December, 1892, January, March, and April, 1893, but that the balance to December 1, 1892, had been remitted.   He was asked the following question: " At the time that you were paid this money by Mr. Richards and applied it to the payment of that note, did you ask Mr. Richards to make any payment on account of his office business? "   He answered as follows: " I do not recall whether it came in that shape.   He gave me to understand if he paid the note at that time it would be all the money he could raise."   On redirect examination he testified that the collection in May had no reference to the account sued on, but to a note which had been sent on to the company by Mr. Richards, asking them to hold it, and as fast as he collected premiums he would pay the note; and the witness further said that the note was for business previous to the period embraced in the claim sued for.   He also testified that at the May visit he made out the monthly accounts in the presence of Mr. Richards, for the months of December, 1892, to April, 1893, inclusive.

George E. Kendall, the secretary of the company, in his deposition, as already stated, made no reference whatever to the payment of the $400 in May, 1893.   Having stated that on December 30, 1892, Richards sent a check for $338.67 to balance his account to December 1, 1892, he was asked the following question: " Do I understand you to say that Mr. Richards on December 30, 1892, balanced his indebtedness to the company as of December 1, 1892, and at that time, December 1, your company had no claims upon him? "   Answer: " The company had a claim upon him December 1, 1892, of $338.67, being the amount for which he sent draft, December 30, 1892."   He further testified as follows; "Q. What, if

anything, did the defendant owe your company December 30, 1892, except the amount of the draft and the premiums on the business from December 1st to the 30th, was there any other indebtedness?" "A. Not to my knowledge."

"Q. Did the plaintiff company at any time during Mr. Richards's agency take any note or notes from him for premiums due the company, and if so, when, and to what amount?

A. I do not know.

Q. You may state who, if any one of the plaintiff company, would be most likely to have this matter in charge and to possess such knowledge.

A. Mr. F. W. Lee, of Omaha, special for the State.

Q. Would not the books of your company show that such a note was taken?

A. They would if it was paid. And afterwards upon examination of the books he stated: "I have made a careful examination of the books and records of the company, and do not find any record of any note having been received from W. A. Richards."

It is clear that if the company accepted a note from the agent for past business payable at a future time, without the consent of the surety, the latter would be discharged as to that indebtedness. If after giving the note, the agent transacted other business in which he received other funds belonging to the company, his payment of those funds to the company would operate to discharge the liability therefor as against the surety, notwithstanding that the same may have been applied upon an indebtedness for which the surety was not liable, the latter not consenting thereto. Hence assuming that Richards had effected a settlement with the company for 1891 business by giving his note for the amount due, the surety became discharged from all liability for that business; and assuming that the $400 paid in May, 1893, consisted of the funds of the company in the hands of Richards accumulated from the collections made from the business transacted during the pe-

riod sued for, then the company would have no right as against the surety to apply the payment upon an old note, as to which the surety was in no way responsible. The surety is sued upon the bond for the failure of the agent to turn over the money collected by him upon policies issued after December 1, 1892. When his accounts were made up in May, 1893, covering the period after December 1, 1892, they showed a liability for $533.56, although probably not an absolute liability for the entire amount since all the premiums might not have been collected, and some of the policies might be subsequently cancelled. Now, if in paying the four hundred dollars in May the agent did by that payment use or turn over any of the funds which he had collected, it is evident that the surety should have credit for the same. In that event a breach would not have occurred, at least to the extent which the sum paid represented money collected upon current business.

In our previous opinion it is shown that no plea of payment was required to entitle the surety to take advantage of any such payment. That proposition is so clear, and so fully discussed in the former opinion that it is unnecessary to enlarge upon it at this time.

When the motion for direction of verdict was made, the evidence in the case consisted of the testimony of Lee and Kendall. The former had testified to a payment in May, 1893, of $400, not accounted for in the demand sued on. If the same should be credited on the account, it would more than cover the balance claimed to be due. Mr. Lee, however, stated that it was paid upon an old note. Mr. Kendall on the other hand testified that the books and records of the company did not show that the company had ever received a note from Richards. He further testified, in effect, that December 30, 1892, by a draft then sent the company, all claim of the company against Richards up to December 1, 1892, was settled. Any explanation of the affair of the note in the deposition of Richards was not in the case, as his testimony had been excluded,

and therefore the court had no right to consider or notice it in determining the motion to direct a verdict.

As the case stood upon the evidence when a verdict. was directed, there were two questions for the jury to determine.    First.    Was Richards indebted to the plaintiff company upon an old note when he paid $400 in May, 1893 ?    The witness Lee testified that he was. The witness Kendall did not personally know, but he was secretary of the company, and he testified that if such a note had been given and paid, the books would show it; and that the books and records did not show any such note; and further he testified as to a full settlement to December 1, 1892.    This evidence was all brought out on cross-examination of the plaintiff's witnesses.    Perhaps a direct conflict was not presented.    But certainly a question of fact was then in the case proper for the determination of the jury; viz., whether the payment of May, 1893, was upon account of the business sued for, or upon a note given for old business.    The defendant had a right to have the question of fact presented to the jury, who were the sole judges of the credibility of witnesses, and of the weight to be given to the testimony.    Second.    The witness Lee was asked if he demanded any money from Richards in May, 1893, upon his office business, which was evidently understood to be current business, apart from that represented by the note; and he replied, "*I do not recall whether it came in that shape.    He gave me to understand that if he paid the note at that time it would be all the money he could raise.*"    What might a jury have legitimately inferred from that answer ? — Clearly, that if he paid the note he could not pay anything on current business.    But might they not have gone even further than that ?    Might they not have concluded that, as it was all the money the agent could raise, and as current business was doubtless in the mind of both Richards and Lee, the accounts having then just been made up, the money, or some of it with which the payment was made, consisted of money collected upon current business ?    We think at

least that the court had no right to take the question from the jury and for itself decide that the money was not received from such a source.

From the disclosures of the record it has seemed doubtful to say the least, whether the trial court had in view the surety's rights in respect to the payment were it to be found that the money which it represented consisted of funds of the company's current business. It may have been thought that the failure of the surety to plead payment left him without the right to take advantage of the use of the current funds sued for, to discharge a note given for old business. If so, the case would have been decided upon an erroneous theory.

We are strongly convinced that on the evidence in the case it should have gone to the jury under proper instructions. Counsel for defendant in error urges the point that it was the duty of the surety to have brought out the fact as to the source of the money used in the payment of May, 1893, from his own witness Richards who could have made full disclosure; and that not having done so it must be presumed that his testimony would have been unfavorable to the surety upon that matter.

If the proposition of counsel is correct, it could have been covered by a proper instruction. But that point does not dispose of the question upon the testimony of the secretary Kendall as to the existence of an old indebtedness to the company, and a note therefor.

We held, also, that it was error to exclude the testimony of the agent Richards in so far as it related to a settlement between the company and himself for business and collections anterior to the period in controversy, and the giving of his notes and their payment. When his deposition was offered in evidence, counsel for the company objected "to each question asked, and to each answer given, and to each exhibit filed with the deposition on the ground that the entire deposition, each question, each answer and each exhibit are immaterial and irrelevant to any issue in this case ; and further that this evidence

in its nature is only corroborative, and until competent evidence is introduced showing the substitution of a new agreement for the old one, or a change in the old agreement or contract, it is improper for this evidence to be given to the jury." The objection was sustained. That part of the objection relating to a new contract had undoubted reference to the claim of the defendant that the instructions to the agent had been altered without the surety's consent, and his territory extended. But outside of such matters, Richards testified to the giving of the note for 1891 business, payable in four months, a payment of some three hundred dollars thereon at maturity, and a new note for the balance, and a payment to Lee in May, 1893, of about $340 in addition to the credits shown in the petition. The reason for giving the note was also explained by him, and he produced a receipt from the company showing that the note was accepted in settlement. He testified also that the note was paid, and that a part of the $340 paid in May was applied upon it. He stated his recollection to be that he had made some previous payments upon the renewal note.

Now all that testimony was manifestly material and relevant, for the reason that it disclosed a settlement of former accounts in part by the note upon which it was claimed that all the May payment had been applied, and showed specifically, by the company's receipt, the account upon which the note was credited, and to discharge which it was accepted. It went into the details of the affair more than the witness Lee did, in his evidence, and should not have been excluded. Its exclusion can hardly be accounted for except upon the erroneous theory that the surety was not in a position to take advantage of payments not set out in the pleadings, or of the application, without his consent, of current funds, to old business, as to which he had ceased to be responsible.

For these reasons we cannot disturb our previous order reversing the judgment and remanding the cause for a new trial. Rehearing will be denied.        *Rehearing Denied.*

CORN, J., and KNIGHT, J., concur.