**G. H. SPAULDING and George D. Fehr,
Appellants (Defendants below),**

v.

**Paul W. LANGE, Appellee
(Plaintiff below).**

**No. 4149.**

Supreme Court of Wyoming.

March 27, 1973.

John E. Ackerman, Casper, for appellants.

Charles S. Aspinwall, Casper, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, and McINTYRE, JJ.

McEWAN, Justice.

Plaintiff sought return of $30,000 invested by him in a joint venture with defendants in which defendants guaranteed the return of his money if he became dissatisfied with the venture. Defendants defended by way of counterclaim and alleged they paid a note executed by the plaintiff in the amount of $30,000, and they had thereby returned to plaintiff the said $30,000. The trial court by general judgment found for the plaintiff on his complaint and against the defendants on their counterclaim, and entered judgment for the plaintiff and against the defendants.

In September of 1963 the defendants entered into an agreement wherein they were buyers and Knight Land Corporation were sellers of 16,500 acres of land in the State of Utah for a total purchase price of $2,000,000. Under the terms of the land

purchase agreement the defendants, as buyers, were to make a down payment of $260,000 and periodic payments thereafter, the first being $105,000 to be paid on or before September 1, 1964. Payments were to be made to the Security Title Company acting as escrow agent. During the time the defendants were negotiating with Knight Land Corporation for the purchase of the land referred to as the "Jeremy Ranch" they were also attempting to raise money for the purpose of making the down payment. They entered into two joint venture agreements—one dated November 13, 1963, and one dated December 20, 1963—in which the defendants and others invested monies in the Jeremy Ranch Project. The plaintiff invested $10,000 in the first joint venture and $20,000 in the second joint venture for a total of $30,000, for which he was to receive an 8 percent interest in the joint venture. As a condition of plaintiff's investment the defendants agreed in writing that any time he became dissatisfied with the venture they would return his money. The defendants were to be the managers of the joint venture in which they intended to develop and sell off various portions of the property at a profit. The plaintiff had no contact with the Knight Land Corporation, and title to the lands being purchased was to be in the names of the defendants acting as trustees for the joint venture.

On September 1, 1964, money was borrowed from Murray First Thrift and Loan Company of Salt Lake to make the $105,000 payment due that date. The defendants could not borrow the total amount because Murray was limited by law to a loan of not more than $30,000 to any one person. The parties, together with Joe Lyon, Jr., another member of the joint venture, each borrowed $30,000 from Murray First Thrift and Loan Company. Each of the four notes was signed by all four people with each of them primarily obligated on a note for $30,000, and contingently liable on three additional notes totaling $90,000. The defendant, Fehr, was issued two checks by Murray First Thrift, one for $20,000 and one for $10,000. Fehr endorsed his check for $10,000 to Security Title, and the other borrowers, including the plaintiff, endorsed their checks for $30,000 to Security Title Company. The plaintiff then gave his check to Spaulding. These checks, totaling $100,000, went toward the first periodic payment due Knight Land Corporation on September 1, 1964, and Security Title Company issued its receipt showing such payment.

On February 19, 1965, Murray First Thrift directed a letter to the signers of the notes addressed to the office of Spaulding in Salt Lake in which they were advised that payment of the notes would be expected on March 1, 1965, the due date. The letter stated that it was confirmation of what had been told orally to Spaulding that week. The defendants borrowed money from a Denver concern and repaid all of the Murray First Thrift notes in July of 1965. Apparently the joint venture did not go well, and in September of 1970 the plaintiff made demand by letter upon the defendants for the return of his $30,000 investment. No reply was received from the demand letter, and in November of 1970 plaintiff filed his complaint against the defendants. The defendants answered the plaintiff's complaint and by way of counterclaim alleged they had, in effect, repaid the $30,000 invested by the plaintiff when they repaid the $30,000 note which the plaintiff signed at Murray First Thrift. The trial court, sitting without a jury, entered judgment for the plaintiff and against both defendants jointly and severally in the principal sum of $30,000 together with interest according to the terms of the guarantee letter, and costs, for a total judgment of $44,871.43, and against the defendants on their counterclaim.

■ The defendants' sole argument on appeal was that the trial court erred in permitting the plaintiff to testify over objection that he was merely an accommodation signer, and by his testimony attempted to vary the terms of an unambiguous written document in violation of the

parol evidence rule. They contended the note clearly showed the plaintiff was the principal obligor and he should not have been permitted to cast himself in any other capacity. The objected-to testimony had to do with conversations and understandings between the plaintiff and the defendants. The defendants recognized the question here was whether or not the parol evidence rule applied to parties on the same side of a document, and they contended that this court has not heretofore ruled on this point. As stated in 32A C.J.S. Evidence § 862, p. 230:

> "The rule excluding parol evidence to vary a writing is not applicable in a controversy between parties to the instrument whose interests thereunder are the same, or their privies, as in the case of contests between grantors, grantees, co-obligors, or co-obligees, or between privies of parties on the same side."

See also 30 Am.Jur.2d, Evidence, § 1052, p. 187, and 12 Am.Jur.2d, Bills and Notes, § 1288, p. 326. The defendants offered no reason for this court to hold differently.

■ While the defendants argued that the note was unambiguous, the record indicates otherwise. The particular note bears the signatures of the plaintiff, Joe Lyon, Jr., and defendants Fehr and Spaulding in that vertical order, with the plaintiff's signature first. The other three notes executed at the same time contained the same signatures in varying order. They then rely on the deposition testimony of the president of Murray First Thrift as to the capacity of the plaintiff in the note in question. That the defendants had to rely on parol testimony to support their contention that the note was unambiguous destroys their argument.

■ It is clear from the record the plaintiff, at the request of the defendants, signed the Murray note and the proceeds went to the payment of the purchase of the lands for which the defendants were solely responsible. The defendant, Spaulding, testified that he did not consider the $30,000 from Murray as an additional investment by the plaintiff, and there was no contention in the pleadings or otherwise by the defendants that this was an additional investment by the plaintiff. The defendants asked the plaintiff to sign the note so they could secure the necessary monies to make the payment to Knight Land Corporation. The defendants never asked the plaintiff to repay the Murray loan and he did not even know of the February 1965 letter from Murray saying the notes would have to be paid on the due date. The plaintiff received none of the monies from the Murray loan. There was therefore no basis upon which the trial court could have found for the defendants on their counterclaim that the plaintiff became indebted to them in the amount of $30,000 when they paid his note with Murray First Thrift. It is evident from various exhibits and unobjected-to testimony that the proceeds from the plaintiff's note at Murray went to the use and benefit of the defendants. They were thereby obligated to the plaintiff for $30,000, which obligation was satisfied when they repaid the Murray note.

There was sufficient evidence to support the trial court's general judgment against the defendants on their counterclaim.

The judgment and decree of the trial court is affirmed.