Paul W. LANGE, Appellant
(Defendant below),

William A. Estes, Jr. and Ralph L. Distad,
(Defendants below),

v.

James VALENCIA et al., Appellees
(Plaintiffs below).

No. 4421.

Supreme Court of Wyoming.

March 31, 1975.

Rehearing Denied May 5, 1975.

Charles S. Aspinwall, Casper, for appellant.

Raymond B. Whitaker, Casper, for appellees.

Before GUTHRIE, C. J., RAPER and THOMAS, JJ.

RAPER, Justice.

Defendant-appellant obtained a judgment against G. H. Spaulding and George D. Fehr in the district court for Natrona County in the sum of $42,200. On appeal, the judgment was affirmed by this court. Spaulding v. Lange, Wyo.1973, 507 P.2d 1094. The plaintiffs-appellees in this case were sureties on a supersedeas bond to secure the district court judgment, with interest, executed in accordance with Rule 73(d)(1), W.R.C.P. Spaulding was apparently unable to pay the judgment at once, upon return of the mandate of affirmance, and entered into a covenant not to execute with Lange,[1] the pertinent terms of which were as follows:

1. Spaulding agrees to pay to Lange the sum of $5,000 on or before May 10, 1973, at 2:00 p. m. It is understood and agreed between the parties hereto that said amount is in consideration of this agreement and covenant and is not to be applied against the judgment herein.

2. Spaulding agrees to pay to Lange the sum of $5,000 on or before June 22, 1973, which amount is to be allocated against the judgment herein.

3. On or before December 21, 1973, Spaulding agrees to pay to Lange the sum of $10,000, which amount is to be allocated against the judgment herein.

4. On or before June 21, 1974, Spaulding agrees to pay to Lange the balance due upon said judgment including all accrued interest up and to the date of payment.

5. Spaulding agrees to maintain and keep in force that certain bond and security now posted with the district court of the Seventh Judicial District as security for the judgment entered herein, or to replace said security with a commercial bond in a manner to be approved by Lange. It is further agreed that from and after the date of this agreement said judgment shall draw and bear interest at the rate of 9% per annum simple interest, notwithstanding any legal rate provided by statute of the State of Wyoming.

6. In the event that all payments contemplated by this agreement are made on or before the due date herein, Lange agrees not to execute upon any property or assets owned by Charles Spaulding, or to execute upon that security heretofore deposited with the district court of the Seventh Judicial District as security for the judgment herein.

7. It is further agreed that should said payments not be made on the due date or prior thereto, Lange may proceed, with execution of judgment against Spaulding, including but not limited to that property heretofore deposited with the district court of the Seventh Judicial District as security for the judgment herein, including the sureties thereon.

Spaulding paid the $5,000 provided by clause 1 and the $5,000 provided by clause 2 but no other installments. The sureties, plaintiffs, had never been advised that Lange and Spaulding had entered into the covenant not to execute nor did they ever give any consent to such an agreement. While the sureties had no exact knowledge of what agreement was entered into between Lange and Spaulding, apparently Spaulding was lulling them along that the matter was being or had been taken care of, with respect to their liability. There is no indication that Lange participated in this.

Lange, following default on the covenant not to execute, served notice on the sure-

---

1. George D. Fehr was not a principal to the supersedeas bond or a party to the covenant not to execute and is not a party to this action. William A. Estes, Jr., as sheriff and Ralph L. Distad, as clerk of court, are not on this appeal. There are motions to dismiss as to them in the court file which have not been acted upon.

ties following the provisions of Rule 65.1, W.R.C.P.:

"Whenever these rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits himself to the jurisdiction of the court and irrevocably appoints the clerk of the court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. His liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies. to the sureties if their addresses are known."

Rule 73(f) provides that, "The provisions of Rule 65.1 apply to a surety upon an appeal or supersedeas bond given pursuant to subdivisions (c) and (d) of this rule."

Upon issuance of an execution against the sureties by Lange, a separate action was filed by them in the district court against Lange, the sheriff and clerk of court to stay execution and enforcement of the supersedeas bond. The district court found that the covenant not to execute discharged the sureties. It is from that decision this appeal is taken. The question here is whether the covenant not to execute did discharge the sureties.

■ At district court hearings and here it was and is argued by the sureties that § 38–1, W.S.1957, was applicable:

"A person bound as surety in a written instrument for the payment of money, or other valuable thing, may, if right of action accrues thereon, require his creditor by a notice in writing, to commence an action on such instrument forthwith, against the principal debtor; and unless the creditor commences such action within a reasonable time thereafter, and proceed with due diligence, in the ordinary course of law, to recover judgment against the principal debtor for the money or other valuable thing due thereby, and to make by execution the amount thereof, the creditor, or the assignee of such instrument so failing to comply with the requisition of such surety shall thereby forfeit the right which he would otherwise have to demand, and receive of such surety, the amount due thereon."

Pursuant to this, a written demand was made by sureties upon Lange to proceed against the principal. The statute is not applicable by the provisions of an ensuing section overlooked by plaintiffs, § 38–3, W. S.1957, providing:

"Nothing in the last two sections [§§ 38–1, 38–2] contained shall be so construed as to affect bonds required by law to be given by guardians, executors, administrators, trustees of an express trust, public officers, or any bond or undertaking required by law to be given in an action or legal proceeding in any court in this state."

Rule 65.1, W.R.C.P., eliminates the necessity of a separate action by the obligee.

The sureties argue that according to standard surety law, any agreement for an extension of time of payment without the consent of the surety, discharges the surety as will the taking or making of a new contract between the principal and creditor. It is also urged that a promise to pay or payment of interest at a higher rate than that demanded by the original contract will have a like effect. Plaintiffs' conclusion and that of the trial judge was that the covenant not to execute discharged the sureties. They rely on Lawrence v. Thom, 1901, 9 Wyo. 414, 64 P. 339, and Riner v. New Hampshire Fire Insurance Co., 1900, 9 Wyo. 81, 60 P. 262, reh. den. 9 Wyo. 446, 64 P. 1062, which so hold in a valid extension of time without reservation of rights against the sureties, and with which we do not disagree but they do not apply here.

We can very simply and quickly dispose of this appeal by a statement of the ap-

plicable rule set out in 74 Am.Jur.2d (Suretyship) § 66, p. 52:

"The rule that a binding extension of time given by a creditor to the debtor without the surety's consent operates to release the surety is subject to the important exception that if the creditor, when purportedly extending time to the principal debtor, expressly reserves his rights in the meantime against the surety, the extension of time is qualified, and the surety is not thereby discharged. * * *"[2]

▆▆▆ An examination of the terms of the covenant, set out before, satisfies us that they are clear in reserving all rights against the sureties; we so hold. Stearns, supra, cites a mass of cases in support of the rule of suretyship we adopt for supersedeas bonds under the facts of this case. The rule is annotated at considerable length in 139 A.L.R. 85. We see no reason to clutter this opinion with reviewing and citing cases all over again.[3]

With respect to commercial transactions, the rule has been carried over into the Uniform Commercial Code, currently contained in § 34–3–606(2), W.S.1957, 1973 Cum.Supp., providing that:

"By express reservation of rights against a party with a right of recourse the holder preserves

"(a) all his rights against such party as of the time when the instrument was originally due; and

"(b) the right of the party to pay the instrument as of that time; and

(c) all rights of such party to recourse against others."

The only difference in our situation is that the court holds the supersedeas bond and, in the ordinary commercial transaction, the "holder" means a person who is in possession of the document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to a bearer or in blank. § 34–1–201(20). Otherwise, in concept the rules are identical. Section 34–3–606(2) of the Uniform Commercial Code was applied in Parnes v. Celia's, Inc., 1968, 99 N.J.Super. 179, 239 A.2d 19, and demonstrates its application to a usual commercial surety sit-

2. Stearns, The Law of Suretyship, 5th Ed., § 6.34, p. 160, puts it another way:
"An extension of time granted to the principal does not discharge the surety where the creditor expressly reserves his rights against the surety. Such a reservation qualifies the extension of time in that, although the creditor has bound himself not to proceed against the debtor until the maturity of the extension, he has not changed his relations with the surety, since he specifically reserved his right to sue him at once. This reservation of rights against the surety being a condition of the contract for extension entered into with the debtor, the latter impliedly asserts that the surety may have all his original rights preserved against him as principal debtor. Although the creditor must forbear suit against the principal, yet the surety, if he pays the debt, may sue the principal at once. Accordingly, there is said to be no alteration of the surety's contract and no equitable reason for urging his discharge."

3. It is said in 74 Am.Jur.2d (Suretyship) § 66, pp. 52–53:
"A variety of reasons have been enunciated in support of this doctrine. Sometimes the creditor's agreement, with a reservation, is spoken of as a mere covenant not to sue the principal debtor. Another theory advanced to support the doctrine is that if the creditor's rights against the surety are reserved, the surety is left unprejudiced in his rights over against the principal, who, by permitting the reservation to become a part of the conditions of the agreement, at least impliedly assents that the surety may protect himself by paying the debt when due and proceeding forthwith against the principal for reimbursement. Some cases rest the effectiveness of the reservation upon the theory that the agreement in favor of the principal is conditioned upon the consent of the surety, who, if he does not desire to consent, may pay the debt and proceed immediately against the principal. At other times the courts reason that an express reservation of rights against the surety rebuts the presumption of intent to discharge him."
The foregoing is a synopsis of the rationale set out in greater detail along with a most interesting discussion of the history of the rule appearing in the 139 A.L.R. annotation, supra, beginning at page 97. An apparent inconsistency is acknowledged but the notion is firmly entrenched by universal acceptance.

uation and does not involve a supersedeas bond.[4]

■ We take the position that the rule is particularly appropriate for supersedeas bond application. To permit any other conclusion but that the sureties remained liable would destroy the usefulness of the bond. Its very purpose is to give a judgment its true value and to protect a judgment creditor against the effects of delay along with discouraging frivolous and vexatious appeals.

The principal on a bond should not be permitted to extinguish and render valueless a judgment, the highest order of indebtedness. The execution of a supersedeas bond by sureties is not a matter to be taken lightly and considered merely a matter of form but accomplishes a genuine purpose and lends weight to the seriousness of the judicial process and prevents court judgments from becoming only empty documents.

The surety is not without remedy. Section 38–7, W.S.1957, provides, "A surety may maintain an action against his principal to compel him to discharge the debt or liability, for which the surety is bound, after the same becomes due." The amount of the judgment became due and payable upon issuance of the mandate in Lange v. Spaulding, supra. The surety had that remedy available to him, in addition to paying off the judgment creditor and suing for recovery of the money. A surety is presumed to undertake a supersedeas bond with the intention of binding himself, is obligated to be aware of his responsibility, and take such steps as may be necessary to protect his interests and reduce the risks attendant upon the serious business of undertaking another's liability. He cannot stand by and hope that someone will slip. Since the sureties here were not privy to the covenant, they are not bound by any of the terms, so there was no alteration of the supersedeas bond as far as they were concerned.

A problem arose here and it was forgotten by the parties that this is a review of the record. We were asked in the briefs and oral argument to take judicial notice of the record in Spaulding v. Lange, supra. Records of cases before this court are returned to the trial court upon issuance of the mandate. We had nothing of which to take judicial notice and a considerable amount of scurrying around was necessary to complete the record and provide copies of the bonds, the very subject matter of the appeal. There may come a time when the pressure and volume of appeal matters will not permit such tolerance and appeals will be dismissed, sua sponte, when the record is incomplete.

■ Reversed and remanded for entry of judgment for the defendants on the issue of this appeal and order dismissing plaintiffs' action and causes.[5]

---

4. See § 12(b), Anno., 43 A.L.R.3d 246, 272, for a complete analysis of Parnes. The case also holds that under the Uniform Commercial Code it is not necessary to give notice to the surety of the express reservation of rights against him when granting a time extension.

5. Defendant Lange's responsive pleading in the case indicates a counterclaim for the amount due on the supersedeas bond. Under Rule 65.1, W.R.C.P., no separate action is necessary. Defendant also claims punitive damages. Since that matter is not before us on this appeal, it is left to the district court to make appropriate disposition.